United States District Court
Southern District of New York
———————————————————————

UNITED STATES OF AMERICA

      - against -                                    04 Cr. 363 (JGK)

JAMES JESUS VALENCIA MUNEVAR, MARIO          <u>MEMORANDUM OPINION AND</u>
ALBERTO VALENCIA,                                         <u>ORDER</u>

                    Defendants.
———————————————————————

JOHN G. KOELTL, District Judge:

      The defendants James Jesus Valencia Munevar and Mario
Alberto Valencia Munevar have moved to withdraw from their plea
agreements but have not moved to withdraw their pleas of guilty.
The Court held an evidentiary hearing on June 28, 2010, at which
the prior counsel for each of the defendants testified.  The
Court has considered all of the evidence submitted as well as
the testimony of the witnesses.  The Court now makes the
following findings of fact and reaches the following conclusions
of law.


                    I

    Both James Valencia Munevar and Mario Valencia Munevar
pleaded guilty on June 28, 2007 to Count 2 of the superseding

indictment in this case, which charged them and others with having conspired, in violation of 21 U.S.C. §846, to distribute and to possess with intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A).  The pleas occurred on the date set for the final pre-trial conference.  The trial was scheduled to begin shortly thereafter.  Each plea was pursuant to a plea agreement dated June 27, 2007.  The plea agreement for James Valencia Munevar provided that the Guideline Offense Level was 35 (based on a base offense level of 38, because the amount of cocaine exceeded 150 kilograms, minus 3 points for acceptance of responsibility), the Criminal History Category was I, and the Stipulated Guidelines Range was 168 to 210 months.  The plea agreement for Mario Valencia Munevar provided that the Guideline Offense Level was 33 (based on a base offense level of 36, because the amount of cocaine was between 50 and 150 kilograms, minus 3 points for acceptance of responsibility), the Criminal History Category was I, and the Stipulated Guidelines Range was 135 to 168 months.

Each plea agreement provided that: "The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range . . . is warranted.  Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein."  Each plea agreement also provided that the parties agreed that a sentence within the Stipulated Guidelines Range

2

would constitute a reasonable sentence, although either party
could seek a sentence outside the Stipulated Guidelines Range.
The plea agreements also contained a waiver of the right to
appeal or litigate under 28 U.S.C. § 2255 or § 2241 any sentence
within the Stipulated Guidelines Range.

At the plea allocutions, James Valencia Munevar was
represented by Matthew Kluger and Mario Valencia Munevar was
represented by Marvin Schechter.  During their plea allocutions,
each defendant swore under oath the he had had a sufficient time
to discuss his case with his lawyer and to discuss the
consequences of pleading guilty and that he was satisfied with
his lawyer and the lawyer's representation of him. Further,
during the plea allocutions, each defendant confirmed, under
oath, among other things, that his agreement had been translated
for him; that he had reviewed the agreement with his lawyer
before signing it; that he understood the agreement before
signing it; and that no one had offered him any inducements,
threatened him, or forced him to plead guilty or to enter into
the plea agreement.  The Court also reviewed with each defendant
the Stipulated Guidelines Range in the plea agreement and
confirmed that each defendant understood that he had given up
his right to appeal or otherwise challenge in a habeas corpus
proceeding any sentence within that range.  The Court then

3

accepted the guilty pleas with specific findings that the pleas
were knowing and voluntary.

Following their guilty pleas, each of the defendants made
"safety valve" proffers to the Government.  The Government
determined that it would not support a safety valve adjustment
to the Stipulated Guidelines Range for James Valencia Munevar
because, in the Government's view, he had made admissions that
indicated that he was in a supervisory position, and thus not
eligible for a two-level downward  safety valve adjustment, now
codified at U.S.S.G. § 2D1.1(b)(11).

As a result of the safety-valve proffer by Mario Valencia
Munevar, the Government determined that he did qualify for the
safety-valve downward adjustment, but that the amount of cocaine
for which he was responsible was in excess of 150 kilograms.
Mario Valencia Munevar then entered into a new sentencing
agreement with the Government.  This "Post-Plea Agreement,"
dated May 5, 2008, provided that the drug weight was in excess
of 150 kilograms of cocaine, resulting in a base offense level
of 38; and that the reductions of 2 levels for the safety valve
adjustment, and 3 points for acceptance of responsibility,
provided a total offense level of 33.  Given Mario Valencia
Munevar's Criminal History Category of I, this produced a
Stipulated Guidelines Range of 135 to 168 months' imprisonment,
the same range provided in the original plea agreement. The

4

Post-Plea Agreement contained the same provisions precluding the parties from arguing for a departure or adjustment from the Stipulated Guidelines Range and acknowledging that a sentence within that range was reasonable, but allowing the parties to argue for a sentence outside that range.  The Post-Plea Agreement also provided the same waiver of the right to appeal or otherwise challenge in a habeas corpus proceeding any sentence within the Stipulated Guidelines Range.   Mario Valencia Munevar was represented in connection with the Post-Plea Agreement by Salvador Delgado, the same lawyer who continues to represent the defendant, and as to whom the defendant has never expressed any dissatisfaction.

The Court held a proceeding on May 8, 2008, at which Mario Valencia Munevar, represented by Mr. Delgado, was examined under oath as to the Post-Plea Agreement.  The defendant indicated that he was satisfied with Mr. Delgado and his representation of him. The defendant testified under oath that he had signed the agreement, that it was translated for him before he signed it, that he had discussed it with his attorney, that he fully understood it, and that no one had offered him any inducements or threatened or forced him to enter into the agreement. The Court expressly noted that the Stipulated Guidelines Range was 135 to 168 months imprisonment, and that the defendant had given up his right to appeal or otherwise challenge any sentence

within that range.   The defense counsel stated that he had
reviewed that with the defendant and the defendant indicated
that he understood.   The Court then expressly found that the
defendant had knowingly and voluntarily entered into the
sentencing agreement fully aware of all of his rights.

The defendants then began to send a series of pro se
submissions to the Court asking for sentencing adjustments that
were prohibited by the Plea Agreement, in the case of James
Valencia Munevar, and the original Plea Agreement and the Post-
Plea Agreement, in the case of Mario Valencia Munevar.
Ultimately, each defendant has sought to be sentenced based on
their guilty plea without any plea agreement.   James Valencia
Munevar is now represented by Louis Fasulo. Mario Valencia
Munevar continues to be represented by Salvador Delgado.


II

To withdraw from a plea agreement, a defendant must show a
"fair and just reason."  United States v. Lopez, 385 F.3d 245,
255 (2d Cir. 2004).  The Court should consider whether the
defendant has shown "credible evidence" that he did not "freely
and voluntarily enter into the plea agreement, either because he
was coerced or improperly induced to accept its terms, or
because he misunderstood them."  Id.  The Court should also
consider any prejudice that would be suffered by the Government

in litigating the defendant's sentence.  Id.  Moreover, there is
a "strong presumption of verity" that attaches to "[s]olemn
declarations in open court" to the effect that defendants
understood their plea agreements and entered into them freely
and voluntarily.  United States v. Carreto, 583 F.3d 152, 158
(2d Cir. 2009) (quoting Blackledge v. Allison, 431 U.S. 63, 74
(1977)).

In this case, each of the defendants submitted similar
affidavits, each dated May 20, 2009, alleging that they did not
knowingly and voluntarily enter into the original plea
agreements.  The Court held an evidentiary hearing and heard the
testimony of the lawyers who represented the defendants at the
time they entered into the original plea agreements.  They
credibly denied the allegations in the defendants' affidavits
and explained that they were prepared to go to trial if the
defendants had decided not to enter into the plea agreements
shortly before trial, but that the defendants, after having the
plea agreements translated for them, entered into the plea
agreements with full awareness of the terms of the agreements.
That testimony was credible and supports the sworn declarations
of the defendants when the original pleas were taken, as well as
the sworn statements of Mario Valencia Munevar at the time that
the Court questioned him under oath about his Post-Plea
Agreement.

7

A.

James Valencia Munevar asserts in his affidavit that the Plea Agreement "was read to [him] in Spanish about 10 minutes prior to signing it, but [he] never personally read or saw the agreement because it was in English." (James Valencia Munevar Aff. ("James Aff.") ¶ 5.) He avers:

> Mr. Kluger did review the Agreement with me, but I had no more than 10 minutes to ask questions and for counsel to explain things to me. Counsel went over certain areas but after signing the Agreement and being given a copy of it, only then did I realize he had failed to review certain parts; and . . . I understood the Plea Agreement as it had been presented to me — that I was accepting a stipulated Guideline range of 168 to 210 months of imprisonment, but the Court would be free to sentence me below the ten year mandatory minimum after safety valve was granted. It was never explained to me that I was waiving my right to safety valve.

(Id.) At another point in the affidavit the defendant asserts: "Mr. Kluger explicitly advised me that I met the 'safety valve' criteria and would be eligible for relief. I relied on this advice to accept the Plea Agreement." (Id. ¶ 4.)

Matthew Kluger testified credibly at the hearing that he discussed the possible plea with the defendant James Valencia Munevar on June 27, 2007, and again on June 28, 2007. On June 28, he spent at least two hours with the defendant, and most of that time was spent discussing the plea. (June 28, 2010 Hr'g Tr. ("Hr'g Tr.") 57-58, 71, 94-95) The entire plea agreement was

translated for the defendant by an interpreter, which took "a long time." (Hr'g Tr. 59, 71, 97.) Contrary to the defendant's allegation, Mr. Kluger testified credibly that, prior to the plea, he discussed the safety valve with the defendant and advised him that he did not believe the defendant was eligible for the safety valve. (Hr'g Tr. 61-62, 71, 100.) Indeed, Mr. Kluger testified that, prior to the final plea agreement, the Government had sought an enhancement for James Valencia Munevar's role in the offense. (Hr'g Tr. 62.) Moreover, Mr. Kluger testified credibly that the defendant's statement that the Plea Agreement was not translated in its entirety is false, because the interpreter translated the entire agreement. (Hr'g Tr. 71.) Mr. Kluger's testimony also contradicted the defendant's statement that he had only ten minutes to ask questions and for counsel to explain the agreement, because the terms of the plea were explained to the defendant on June 27 and the agreement was discussed again for at least a couple of hours on June 28, when the agreement was translated for the defendant. (Hr'g Tr. 71-72.)

After the plea, the defendant expressed a desire to have a safety valve proffer with the Government and Mr. Kluger arranged for that safety valve proffer. (Hr'g Tr. 100.) However, after arriving at the United States Attorney's Office, Mr. Kluger

testified, the defendant wisely decided not to make a safety valve proffer.  (Hr'g Tr. 109-110.)

Mr. Kluger also testified credibly that other assertions in the defendant's affidavit were not accurate.  The defendant swore that "[p]rior to entering into the Plea Agreement, Mr. Kluger failed to explain anything to [him] in regards to a defense."  (James Aff. ¶ 2.)  The defendant also swore that "Mr. Kluger never reviewed even one call from the thousands of wiretap evidence, in order to point out the weight of the evidence against [him]."  (Id.)  Mr. Kluger testified that he did indeed review potential defenses with the defendant, and that they discussed "many calls . . . and almost all of the evidence" against the defendant.  (Hr'g Tr. 67-68.)

In his affidavit, the defendant asserted that Mr. Kluger told him that "accepting the Plea Agreement was [his] best and only option because anything else would result in a significantly high sentence of approximately 25 years."  (James Aff. ¶ 3.)  Mr. Kluger responded that the plea agreement was the best option for the defendant, but not the only option, because he was in fact preparing for trial, which, the record reflects, was scheduled to begin shortly after the defendant decided to enter a plea of guilty.  (Hr'g Tr. 70.)  The defendant also complained that the defense counsel did not advise him that he "could enter a plea of guilty without accepting the Plea

10

Agreement."  (James Aff. ¶ 3.)  However, Mr. Kluger testified credibly that he did discuss that with the defendant, but advised the defendant that "he would do so at his peril," because the Government could seek enhancements that defense counsel had gotten the Government not to include in the Plea Agreement.  (Hr'g Tr. 70, 103-04)

In short, the credible evidence establishes that the defendant knowingly and voluntarily entered into the Plea Agreement with a Stipulated Guidelines Range.  This conclusion is supported by the defendant's solemn statements at his guilty plea allocution and by the credible testimony of the lawyer who represented him in connection with entering into the Plea Agreement and who represented him at sentencing.  The defendant's affidavit goes far toward establishing that he entered into the Plea Agreement knowingly and voluntarily with a full understanding of what he was doing and, to the extent that his affidavit contains statements  contrary to his statements at the plea proceeding and the testimony of his lawyer, the statements in the affidavit are not credible.

B.

Mario Valencia Munevar asserts in his affidavit:

(a) The Agreement was read to me in Spanish about 10 minutes  prior  to  signing  it,  however,  I  never personally  read  or  saw  agreement  because  it  was  in

11

English.    However,  the  whole  agreement  was  not
translated  as  I  was  later  came  to  find  out;  (b)
counsel,  Marvin  E.  Schechter,  did  review  the  Agreement
with  me,  but  I  had  no  more  than  10  minutes  to  ask
questions  and  for  counsel  to  explain  things  to  me.
Counsel  went  over  certain  areas  but  after  signing  the
Agreement  and  being  given  a  copy,  only  then  did  I
realize  he  had  failed  to  review  certain  parts;  and  (c)
I  understood  the  Plea  Agreement  as  it  had  been
presented  to  me — that  I  accepted  a  Guideline  range  of
135  to  168  months;  but  that  after  qualifying  for
safety  valve,  the  sentence  would  be  significantly
reduced.   At  no  time  was  I  informed  that  I  was  waiving
right  to  seek  safety  valve  or  minor  role  adjustment.

(Mario Valencia Munevar Aff. ("Mario Aff.") ¶ 8.)[1]  Mario

Valencia Munevar was afforded a safety valve proffer after his

guilty plea allocution.  The result of that proffer, as noted

above, was a Post-Sentence Agreement that afforded the defendant

a two-level downward adjustment for qualifying for the safety

valve, but increased the amount of drugs for which he was

responsible, resulting in the same Stipulated Guidelines Range

of 135 to 168 months.  The defendant attempts to explain away

the existence of the Post-Plea Agreement and all of the

statements that he made in connection with that Agreement by

explaining that he "entered into the second Plea Agreement

solely because of fear and uncertainty as to how to amend the

Original Plea Agreement. . . . The recommendation from counsel,

Salvador Delgado, Esq., was to accept the second Plea Agreement

---

[1] The affidavit of Mario Valencia Munevar was admitted in evidence at the June 28, 2010 hearing (Tr. 30), although it is not listed among the exhibits at the end of the transcript.

which guaranteed the 'safety valve,' and then he would
concentrate on seeking minor role adjustment." (Id. ¶ 7.)

Marvin Schechter, who represented Mario Valencia Munevar in
connection with his original plea and Plea Agreement, testified
credibly that the defendant's statements about the circumstances
under which he entered into the original plea agreement were
false. Mr. Schechter testified that he discussed the potential
plea with the defendant on several occasions, including the fact
that the Government's plea offer did not include a minor role
adjustment, and that Mr. Schechter advised the defendant that he
did not qualify for a minor role adjustment. (Hr'g Tr. 32-37.)
According to Mr. Schechter, the plea agreement was translated
for the defendant on the day of the plea and the defendant was
given adequate time and opportunity to ask questions about the
plea agreement. (Hr'g Tr. 37-38.)

Mario Valencia Munevar also makes other statements in his
affidavit that are contradicted by the credible testimony of Mr.
Schechter. The defendant alleges: "If Mr. Schechter had
explained to me the applicability of a minor role, the
likelihood of me falling into this provision, and the effect
that this would have had on my potential sentence, then I would
never have entered in the Plea Agreement." (Mario Aff. ¶ 4.)
Mr. Schechter testified credibly that he did discuss the issue
of a minor role adjustment with the defendant along with the

13

fact that the defendant did not qualify for that adjustment.
(Hr'g Tr. 32-37.)   The defendant also alleges in his affidavit:
"I was guaranteed that I qualified for 'safety valve,' hence I
was under the impression that it could be seeked even after
accepting the Plea Agreement." (Mario Aff. ¶ 5.)   Mr. Schechter
testified credibly that that statement was false.   Mr. Schechter
credibly explained that the defendant was not guaranteed that he
qualified for the safety valve.   Rather, the defendant was told
that the plea agreement did not bar him from going to the
Government to seek safety valve treatment, but that such a
safety valve proffer, based on Mr. Schechter's knowledge of the
evidence, would have resulted in "much greater exposure." (Hr'g
Tr. 33-34.)

        The credible evidence, including the two allocutions of
Mario Valencia Munevar and the sworn testimony of Mr. Schechter,
establishes that the defendant's Plea Agreement and the Post-
Plea Agreement were entered knowingly and voluntarily and with a
full understanding of their terms.   Indeed, the defendant
appears to complain only about two aspects of those agreements.
He complains about the failure of the first agreement to provide
for safety valve relief.   But that agreement did not by its
terms provide for such relief and the defendant entered into
that agreement knowingly and voluntarily, and with a full
understanding of its terms.   In any event, the defendant was in

fact afforded safety valve relief in the Post-Plea Agreement, which is the current binding agreement, and there is therefore no basis to withdraw from the Post-Plea Agreement.  Second, the defendant's complaint about the agreements' failure to afford an adjustment for a minor role in the offense is a claim to an adjustment that is not provided in the Plea Agreement or in the Post-Plea Agreement.  The testimony establishes beyond doubt that the defendant was aware that there was no such adjustment in either agreement, but decided to proceed with both plea agreements knowingly and voluntarily.  The defendant's final position in his affidavit is that his current counsel, whose representation he has not challenged, advised him to enter into the Post-Plea Agreement and that his counsel would "concentrate on seeking [a] minor role adjustment."  (Mario Aff. ¶ 7.)  By its terms, the Post-Plea Agreement precludes the defendant from seeking a departure or an adjustment under the Sentencing Guidelines, but the defendant can argue for a sentence outside of the Stipulated Guidelines Range based on the factors to be considered in imposing sentence under 18 U.S.C. § 3553(a).

III

It is clear from the evidence that there is no "fair and just reason" to allow the defendants to withdraw from their plea agreements.  The evidence establishes that the defendants

15

knowingly and voluntarily entered into the plea agreements
shortly before trial in order to obtain the best resolution that
they could at the time, and with full knowledge of what the
terms of those agreements were.  The defendants were not coerced
or improperly induced, and fully understood what they were
doing.  Moreover, there would be some prejudice to the
Government because, without the plea agreements, the
Government's ability to prove aspects of the Sentencing
Guidelines calculations, including the roles of the defendants,
has been impaired by time.  The Government's main cooperating
witnesses have been sentenced, released, and deported.  (Sept.
16, 2008 Puvalowski Ltr. 5.)

CONCLUSION

For the reasons explained above, the applications by James
Valencia Munevar to withdraw from his Plea Agreement and by
Mario Valencia Munevar to withdraw from his Plea Agreement
and/or Post-Plea Agreement are **denied.**

SO ORDERED.

Dated:      New York, New York
            November / ⟩ , 2010

                                   _____
                                   John G. Koeltl
                                   United States District Judge

16